UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| L.H., *a Minor Student, et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | Case No.1:14-CV-00126 |
| ) | |
| v. ) | Judge Curtis L. Collier |
| ) | Magistrate Judge Susan K. Lee |
| HAMILTON COUNTY DEPARTMENT ) | |
| OF EDUCATION, ) | |
| ) | |
| *Defendant*. ) | |

**M E M O R A N D U M**

Before the Court is a motion by Plaintiffs to admit evidence for reimbursement for the costs of private education at the Montessori School of Chattanooga ("TMS") (Doc. 251). Defendant has responded (Doc. 254), and Plaintiffs have replied (Doc. 257). For the following reasons, the Court will **GRANT** the motion by Plaintiffs to admit evidence for reimbursement for the costs of private education at TMS. (Doc. 251.) Accordingly, the Court will **ORDER** Defendant to reimburse Plaintiffs in the amount of **$103,274.00**.

**I.   BACKGROUND**

L.H. is a fifteen-year-old boy with Down Syndrome. From 2009 to 2013, L.H. attended Normal Park Elementary School, a public school operating under the Hamilton County Department of Education ("HCDE"). In May 2013, L.H.'s parents rejected the individualized education program ("IEP") which had been developed by HCDE, instead deciding to enroll him at TMS for the 2013-2014 school year, L.H.'s third grade in school. L.H. has remained at TMS

through the eighth grade, and L.H.'s parents have borne the costs of his private education throughout. L.H.'s parents have additionally paid for a full-time aide to assist L.H., though TMS has employed the aide.[1]

While L.H. received his education at TMS, his parents filed a complaint under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, *et seq.*, which requires states that receive federal funds for education to provide a "free and appropriate education" (a "FAPE") to every disabled child. This Court considered the merits of that dispute, and determined that placement in accord with HCDE's 2013 IEP was more restrictive than necessary—and therefore improper. (Doc. 173.) This Court also determined that L.H.'s alternative private placement at TMS did not satisfy the IDEA, so L.H.'s parents were not entitled to reimbursement. (*Id.*) Both parties appealed to the United States Court of Appeals for the Sixth Circuit, which affirmed that placement in accord with HCDE's 2013 IEP was more restrictive than necessary. (Doc. 249.) The Sixth Circuit found, however, that the educational program at TMS satisfied the IDEA and, therefore, that L.H.'s parents are entitled to reimbursement. (*Id.*) Because the appropriate amount of reimbursement was not evident from the record, the Sixth Circuit remanded the matter to this Court to render a judgment as to the amount of reimbursement necessary under the IDEA. (*Id.*) A mandate issued October 4, 2018.[2] (Doc. 259.)

---

[1] Defendant disputes whether the aide was employed by TMS for L.H.'s third year of school. This argument is addressed below.

[2] Plaintiffs filed motions before this Court before the mandate issued. (Docs. 251, 252.) In response to each motion, Defendant argued that the Sixth Circuit order was stayed because HCDE had filed a timely petition for rehearing *en banc* with the United States Court of Appeals for the Sixth Circuit. Plaintiffs acknowledged that a request for rehearing *en banc* had been filed, but did not wish to waive a twenty-one-day deadline set by this Court to refile a motion for attorney's fees. (Doc. 248 at 2-3.) Because a mandate has since issued, jurisdiction before this Court is now proper.

## II.     ANALYSIS

"Congress intended that IDEA's promise of a 'free appropriate public education' for disabled children would normally be met by an IEP's provision for education in the regular public schools or in private schools chosen jointly by school officials and parents." *Florence Cty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 12 (1993).  When a child's parents do not agree to cooperate with a proposed IEP, however, they are faced with a choice: "go along with the IEP to the detriment of their child if it turns out to be inappropriate or pay for what they consider to be the appropriate placement."  *Id.* (quoting *School Comm. of Burlington v. Dept. of Ed. of Mass.*, 471 U.S. 359, 370 (1985)).  And if an IDEA violation is ultimately found by a court, that court is authorized to "grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(B)(iii).  But to those parents who select the second option and pay for their child's private education, it would be an "empty victory" to have a court tell them several years later that they were right to place their child in private school, without some compensation for the costs they bore in doing just that.  *Florence Cty.*, 510 U.S. at 12.  Because of this, the Supreme Court has established that "Congress meant to include retroactive reimbursement to parents as an available remedy in a proper case."  *School Comm. of Burlington*, 471 U.S. at 370.  Such relief aligns with the IDEA's promise of a "free appropriate public education" for every disabled child.  *Id.*

Equitable considerations are relevant in fashioning relief, and the courts enjoy broad discretion in doing so.  *Deal v. Hamilton Cty. Bd. of Educ.*, 392 F.3d 840, 866 (6th Cir. 2004); *Knable ex. rel. Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 763 (6th Cir. 2001) ("[I]t is the district court's role in the first instance to weigh the equities in this case to determine the appropriate level of reimbursement to be awarded.").  The Sixth Circuit has adopted a "qualitative approach" to determining the proper amount of reimbursement, instructing courts "to more flexibly

calculate compensatory education in terms of placing the student in the same position that he or she would have occupied but for the school district's IDEA violations." *Somberg on behalf of Somberg v. Utica Cmty. Sch.*, No. 17-2195, 2018 WL 5784477, at *9 (6th Cir. Nov. 5, 2018). The court's decision must be based on the preponderance of the evidence. 20 U.S.C. § 1451(i)(2)(c)(iii). Total reimbursement is not appropriate if the court determines that the cost of the private education was unreasonable. *Florence*, 501 U.S. at 16.

Here, Plaintiffs submitted a declaration of D.H., a parent of L.H., regarding the costs for tuition and an aide for the third through eighth grade years at TMS. (Doc. 251-1.) D.H. declares that total costs, including tuition and costs of an ancillary aide, totaled $108,612 for third through eighth grades. (*Id.*) D.H. was required to make a "good faith estimate" regarding the costs of L.H.'s aide for eighth grade, as the school year had just commenced and the aide had not yet been paid. (*Id.*)

On other occasions during the course of this action, D.H. has also testified to the costs of L.H.'s tuition (Doc. 328 at 29-31) or answered interrogatories regarding costs (Doc. 254-3 at 2). Defendant disputes the costs declared in D.H.'s most recent declaration (Doc. 251-1), arguing that the amounts do not align with the testimony D.H. has previously given or answered in interrogatories. Defendant points to specific discrepancies in the amounts of costs claimed regarding each school year. In addition, Defendant went through a line-item review of a statement provided by Plaintiffs regarding the costs of L.H.'s assistant, and argues that some costs (such as the rental of a gym for L.H.'s birthday party or costs for L.H.'s damaged tablet) are not reimbursable under the IDEA. (Doc. 251-1 at 8.)

In reply, Plaintiffs submitted the declaration of Peg Everts, MTS's Director of Finance, who attests to tuition and aide costs for L.H. (Doc. 257-1.) Peg Everts states that L.H.'s parents

paid $47,351 for tuition and $55,923 for a full-time aide for L.H. for the course of his education at TMS—which totals $103,274. (*Id.*) Peg Everts states that D.H. understated costs of tuition by $1,262, but overstated costs of L.H.'s full-time aide by $5,338. (*Id.*) Everts states the discrepancy regarding the full-time aide is due to TMS applying an additional $4,233 from the parents to a "pay card" typically used for items like student lunches, student supplies, and studio charges, rather than to the aide. (*Id.*) Thus, Everts states that the discrepancy between the costs she identified and the costs D.H. identified is $1,105. That number assumes that D.H. is also entitled to reimbursement for items purchased through the pay card—school lunches, student supplies, and studio charges. Plaintiffs' reply brief seeks reimbursement for these costs, in addition to costs for tuition and the full-time aide, arguing D.H. is entitled to $107,507. (Doc. 257 at 2.)

Mindful of the Court's duty to place the student in the same position that he or she would have occupied but for the school district's IDEA violations, *Somberg*, 2018 WL 5784477, at *9, the Court finds Peg Evert's total costs of $103,274—for Plaintiffs' full costs of tuition and the costs of a full-time aide—to be the appropriate amount of reimbursement in this case. The Court will not award reimbursement for costs for items purchased through L.H.'s pay card, reasoning that the costs of school lunches, school supplies, and other miscellaneous items would have been borne by L.H.'s parents even if L.H. continued in public education. The Court finds the sworn declaration of Peg Everts to be reliable by a preponderance of the evidence, as it is based on amounts already paid to TMS, as opposed to estimates D.H. made because the 2018 school year had not yet commenced.

Defendant makes several additional arguments against an award of reimbursement in this case which the Court will address in turn. Defendant argues: (1) Plaintiffs cannot recoup tuition and costs incurred after this Court's November 4, 2016 ruling; (2) Plaintiffs cannot recoup costs

of L.H.'s third grade aide because a third grade teacher, Jamie Watts, believed that the aide was an employee of L.H.'s parents, and not TMS; and (3) Plaintiffs must provide "documented evidence unequivocally establishing and confirming" exact charges, exact amounts paid, that the payments were applied by TMS to L.H.'s tuition, and "the accurate, inarguable total amount" of tuition and payments for the aide's services. (Doc. 254.)

First, Defendant argues that this Court "clearly signaled" in its November 4, 2016 Order that HCDE would, in good faith, follow applicable law if L.H. re-enrolled at an HCDE school. Defendant states that in spite of this, L.H.'s parents continued to enroll L.H. at TMS for the 2016-2018 school years. Because Plaintiffs made that "unilateral decision," Defendant argues L.H.'s parents are not entitled reimbursement. Of course, however, both parties appealed this Court's decision, believing it to be incorrect. The Court of Appeals for the Sixth Circuit determined that L.H.'s parents were correct to bear the risk that they may not be reimbursed, instead finding that they *are* entitled to reimbursement. The Court of Appeals for the Sixth Circuit made this determination in spite of the fact that L.H.'s parents did not invoke the IDEA's "stay put" provision, § 1451(j), and keep L.H. enrolled at Normal Park. Along the same lines, it does not follow to say that once a violation of the IDEA is found, a child must be pulled from a private placement and enrolled in public school while the parties appeal the issue of a proper school placement. Defendant offers no authority suggesting such is the case. And because the decision of the Sixth Circuit is authoritative, this Court must avoid an interpretation which would render it an "empty victory." *Florence Cty.*, 510 U.S. at 12.

Second, Defendant argues Plaintiffs cannot recoup the costs of L.H.'s third-grade aide because the aide was an employee of L.H.'s parents, not TMS. Plaintiffs are correct to point out, however, that there is no dispute that the aide performed her work *at TMS for L.H.*, with L.H.'s

6

parents paying for it. In its opinion, the Court of Appeals for the Sixth Circuit credited the testimony of L.H.'s parents' expert, Dr. Whitbread, over HCDE's proffered expert, Dr. Kabot. (Doc. 249 at 22, n.8.) Dr. Whitbread testified that L.H.'s parents had two choices upon removing L.H. from the HCDE public school system: homeschooling, which would be counterproductive to the idea of mainstreaming, or private schooling at TMS, which would include a personal paraprofessional aide. (Doc. 249 at 20.) The Court of Appeals for the Sixth Circuit emphasized the importance of the aide in stating that the record was "clear that L.H. had a personalized curriculum at TMS and a paraprofessional aide dedicated just to him, such that he was working at his own pace with frequent repetition, intense one-on-one instruction, and repeated prompting and reinforcement." (Doc. 249 at 21-22.) Because the aide was such a crucial component to TMS's constituting a proper placement under the IDEA, this Court will not deny reimbursement for the aide regardless of whether the aide was employed by TMS or L.H.'s parents. The distinction, if true, does not make a difference when it comes to the issue of reimbursement.

Third, Defendant argues Plaintiffs must provide documented evidence unequivocally establishing and confirming exact charges, exact amounts paid, and that the payments were applied by TMS to L.H.'s tuition. The IDEA, however, does not require the precise certitude Defendant demands. The statute itself mandates this court make a decision about reimbursement "on the preponderance of the evidence." 20 U.S.C. § 1451(i)(2)(c)(iii). In other words, Plaintiffs must show that amounts claimed are more likely true than not. *See Sixth Circuit Pattern Jury Instructions 6.05(4) – Coercion/Duress* (2017). Plaintiffs have met this burden of proof through proffering the sworn declaration of Peg Everts, Director of Finance at TMS. (Doc. 257-1.) Everts declared that L.H.'s parents paid $47,351 for tuition for grades 3-8, and reimbursed TMS for L.H.'s full-time aide in the amount of $55,923. In total, L.H.'s parents have paid $103,274 for L.H.'s

7

private education. Under the IDEA's promise, however, that education should have been free. *See Florence Cty.*, 510 U.S. at 15-16 ("There is no doubt that Congress has imposed a significant financial burden on States and school districts that participate in IDEA. Yet public educational authorities who want to avoid reimbursing parents for the private education of a disabled child can do one of two things: give the child a free appropriate public education in a public setting, or place the child in an appropriate private setting of the State's choice. This is IDEA's mandate[.]").

### III. CONCLUSION

In conclusion, the Court will **GRANT** the motion by Plaintiffs to admit evidence for reimbursement for the costs of private education at TMS. (Doc. 251.) Accordingly, the Court will **ORDER** Defendant to reimburse Plaintiffs in the amount of **$103,274.00**.

**An Order Will Enter.**

**ENTER:**

**/s/**
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**