UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

L.H., *a Minor Student, et al.*,                    )
                                                     )
     *Plaintiffs*,                              )          Case No.1:14-CV-00126
                                                     )
v.                                                   )          Judge Curtis L. Collier
                                                     )          Magistrate Judge Susan K. Lee
HAMILTON COUNTY DEPARTMENT            )
OF EDUCATION,                                 )
                                                     )
     *Defendant*.                               )

## M E M O R A N D U M

Before the Court is a motion filed by Plaintiffs for attorney's fees and costs.  (Doc. 252.)

Defendant has responded (Doc. 255), and Plaintiffs have replied (Doc. 258).  For the following

reasons, the Court will **GRANT IN PART** the motion by Plaintiffs for attorney's fees and costs.

(Doc. 252.)  Accordingly, the Court will **ORDER** Defendant to pay Plaintiffs $342,545.75 in

attorney's fees and $6,703.75 in costs, totaling an amount of **$349,249.50**.

Also before the Court is a motion filed by Plaintiffs to file a supplemental declaration

regarding Plaintiffs' petition for attorney's fees.  (Doc. 262.)  Because the Court considered

Plaintiffs' requested rate to be reasonable based on memoranda filed regarding Plaintiffs' motion

for attorney's fees and costs, the Court will **DENY AS MOOT** Plaintiffs' motion to file a

supplemental declaration regarding Plaintiffs' petition for attorney's fees.  (Doc. 262.)

## I.       BACKGROUND

L.H. is a fifteen-year-old boy with Down Syndrome.  From 2009 to 2013, L.H. attended

Normal Park Elementary School, a public school operating under the Hamilton County

Department of Education ("HCDE"). In May 2013, L.H.'s parents rejected the individualized education program ("IEP") which had been developed by HCDE, instead deciding to enroll him at The Montessori School of Chattanooga ("TMS") for the 2013-2014 school year, L.H.'s third grade in school. L.H. has remained at TMS through the eighth grade.

While L.H. received his education at TMS, his parents filed a complaint under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, *et seq.*, which requires states that receive federal funds to provide a "free and appropriate education" (a "FAPE") to every disabled child. Plaintiffs also brought claims under Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504"), and other causes of action. (Doc. 64.) In November 2015, this Court granted a motion by HCDE to sever Plaintiffs' IDEA claims from their other claims. (Doc. 121.) In December 2015, this Court approved a settlement agreement entered into between Plaintiffs and then-Defendant the Tennessee Department of Education ("TDOE"). (Doc. 138.) TDOE paid the sum of $65,000.00 into a special needs trust for the benefit of L.H, $75,000.00 to reimburse Plaintiffs D.H. and G.H. for expert and attorneys' fees, and $45,000.00 to Gilbert, Russell, McWherter, Scott & Bobitt, PLC, for attorneys' fees incurred to that date. (Doc. 112 at 2-3.) HCDE was, afterwards, the only remaining Defendant. Ultimately, on the merits of Plaintiffs' IDEA claims, this Court determined that placement in accord with HCDE's 2013 IEP was more restrictive than necessary— and therefore improper. (Doc. 173.) This Court also determined that L.H.'s alternative private placement at TMS did not satisfy the IDEA, so L.H.'s parents were not entitled to reimbursement. (*Id.*)

Both parties appealed to the United States Court of Appeals for the Sixth Circuit, which affirmed that placement in accord with HCDE's 2013 IEP was more restrictive than necessary.

(Doc. 249.)  The Court of Appeals for the Sixth Circuit found, however, that the educational program at TMS satisfied the IDEA and that L.H.'s parents were therefore entitled to reimbursement.  (*Id.*)  The appellate court accordingly observed that Plaintiffs' claims under the ADA and Section 504 were "redundant" and therefore pretermitted those claims in the appeal. (Doc. 294 at 4, n.1.)  A mandate issued October 4, 2018.[1]  (Doc. 259.)

Plaintiff now moves this Court for attorney's fees and costs pursuant to Federal Rule of Civil Procedure 54 and Eastern District of Tennessee Local Rule 54.2.  (Doc. 252.)  Plaintiffs request attorney's fees of $378,831.25, plus costs of $6,703.75, for a total of $385,535.00.  (*Id.* at 2.)

## II.    DISCUSSION

### A.    Entitlement to Attorney's Fees

Our legal system generally requires each party to bear his or her own litigation expenses and attorney's fees, regardless of whether he or she wins or loses.  *Fox v. Vice*, 563 U.S. 826, 832 (2011).  "Indeed, this principle is so firmly entrenched that it is known as the 'American Rule.'" *Id.*

In certain types of cases, however, Congress has authorized courts to deviate from this rule by shifting the winning party's attorney's fees to the losing party.  *See Burlington v. Dague*, 505 U.S. 557, 562 (1992) (listing federal fee-shifting provisions).  Cases brought under the IDEA are

---

[1] Plaintiffs filed motions before this Court before the mandate issued.  (Docs. 251, 252.) In response to each motion, Defendant argued that the Sixth Circuit order was stayed because HCDE had filed a timely petition for rehearing *en banc* with the Sixth Circuit.  Plaintiffs acknowledged that a request for rehearing *en banc* had been filed, but did not wish to waive a twenty-one-day deadline set by this Court to refile a motion for attorney's fees.  (Doc. 248 at 2-3.) Because a mandate has since issued, jurisdiction before this Court is now proper.

among those special instances where courts may shift attorney's fees: "[i]n IDEA proceedings, the district court has the discretion to award reasonable attorney fees to 'a prevailing party who is the parent of a child with a disability.'" *Somberg on behalf of Somberg v. Utica Cmty. Sch.*, 908 F.3d 162, 178 (6th Cir. 2018) (quoting 20 U.S.C. § 1415(i)(3)(B)(i)). In the Sixth Circuit in particular, district courts are required to award attorney fees to a prevailing party under the IDEA where no special circumstances militate against such an award. *Wikol ex rel. Wikol v. Birmingham Pub. Sch. Bd. of Educ.*, 360 F.3d 604, 611 (6th Cir. 2004). The burden is on the *non-prevailing* party to make a strong showing of special circumstances which may warrant a denial of fees. *Déjà vu v. Metro. Gov't of Nashville*, 421 F.3d 417, 422 (6th Cir. 2005).

Here, Plaintiffs are unquestionably the prevailing party in their IDEA case. This Court entered judgment for Plaintiffs on August 9, 2017. (Doc. 212.) On appeal, the Court of Appeals for the Sixth Circuit affirmed this finding, further finding that Plaintiffs were also owed monetary reimbursement for amounts spent on L.H.'s education at TMS. Because full relief was given under the IDEA, this Court is required to award attorney's fees. *Wikol*, 360 F.3d at 611. Defendant has not otherwise argued that special circumstances warrant the blanket denial of a fee award. *Id.*

### B. Calculation of Attorney's Fees

The initial estimate of a reasonable attorney's fee is calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. *See Blum v. Stenson*, 465 U.S. 886, 888 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). This amount is referred to as the "lodestar." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). "Generally, a 'strong presumption' favors the prevailing lawyer's entitlement to his lodestar fee." *Id.* at 49-50 (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986)). Thus, modifications to the

lodestar are proper only in certain "rare" and "exceptional" cases, supported by both "specific evidence" on the record and detailed findings by the district court. *Del. Valley Citizens' Council*, 478 U.S. at 565.

The lodestar can, however, be adjusted in consideration of other factors, such as the time and labor involved in the case, the novelty and difficulty of the questions at issue, and the skill requisite to perform the legal services properly, among others. *See Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989). Those factors were first listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), and have since been adopted by the Supreme Court as appropriate for district courts to consider. *Hensley*, 461 U.S. at 434 n.9. The twelve *Johnson* factors are:

> (1) the time and labor involved;
> (2) the novelty and difficulty of the questions;
> (3) the skill requisite to perform the legal services properly;
> (4) the preclusion of other employment by the attorney due to acceptance of the case;
> (5) the customary fee;
> (6) whether the fee is fixed or contingent;
> (7) time limitations imposed by the client or circumstances;
> (8) the amount involved and the results obtained;
> (9) the experience, reputation, and ability of the attorneys;
> (10) the undesirability of the case;
> (11) the nature and length of the professional relationship with the client; and
> (12) awards in similar cases.

488 F.2d at 717-19. The most critical factor in determining the reasonableness of a fee award is the degree of success obtained. *See Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

### 1. Lodestar Calculation

The Sixth Circuit presumes that the lodestar amount—the reasonable hourly rate times the number of hours worked—amounts to a reasonable fee. *EEOC v. Dolgencorp, LLC*, 899 F.3d 428, 436 (6th Cir. 2018). In order to aid the Court in a determination of the lodestar value, Plaintiffs

have submitted declarations by counsel involved in this matter, Justin Gilbert and Jessica Salonus, a timesheet detailing their rates, hours, and tasks worked, and the declarations of Hill Rivkin, Dean of the University of Tennessee College of Law in Knoxville, and Donna Mikel, an attorney in the Chattanooga, Tennessee region.

### a. Hourly Rates

"[D]etermining an appropriate 'market rate' for the services of a lawyer is inherently difficult." *Blum*, 465 U.S. at 806 n.11. Because of this, "[t]o inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.*

Justin Gilbert, a twenty-four-year attorney, founder and senior partner of Gilbert McWherter Scott and Bobbitt, PLC, seeks his regular rate of $400 per hour. Gilbert declares that he began using this rate in January 2017, and that the rate is appropriate in the Eastern District of Tennessee for cases of this type, particularly considering the novelty, contingency risk, lack of interim payments, degree of difficulty, and his experience. (Doc. 253-1.)

Gilbert spends well over half his time on education law for children, with a principal focus on children with disabilities. He has experience trying many cases involving students and employees with disabilities, ranging from physical disabilities to mental disabilities. His first due process hearing for a child with a disability, with successful subsequent action under the IDEA and Section 504, dates back to 1996. Gilbert has been named to the *Best Lawyers in America* List for 2018 and is AV rated by Martindale Hubbell.

Former associate Jessica Solonus, a nine-year attorney who now has her own special education law firm, seeks her regular rate of $275 per hour. (Doc. 253-2.) Solonus declares that her prior firm set this rate in 2016 for billing in contingency-fee cases, and that the rate is consistent with billing rates for complex federal court civil rights matters in the Eastern District of Tennessee for a full-time associate.

Solonus also has particular skill, experience, and reputation in the special education field. Her legal work primarily involves representing children with special needs in federal court and due process proceedings regarding issues under the IDEA, ADA, and Section 504. She is also a staff attorney for a national non-profit organization that advocates nationally for the rights of children with disabilities under the IDEA, ADA, and Section 504.

Dean Hill Rivkin[2] declares that in view of the skill, experience and reputation of the lawyers for Plaintiff, the fees fall "well within the customary fees charged by lawyers with comparable credentials" and are "reasonable under all applicable standards." (Doc. 253-3.) Rivkin declares that in recent years, Gilbert has represented clients in path-breaking special education cases. In his opinion, Gilbert is the leading lawyer in the special education field in Tennessee. He states that Gilbert and Solonus exemplify the best of the legal profession.

Donna Mikel,[3] a plaintiff's civil rights attorney and partner at the law firm of Burnette, Dobson, and Pinchack in Chattanooga, Tennessee, declares that the rates sought by Gilbert and

---

[2] Rivkin is the Williford Gragg Distinguished Professor of Law Emeritus at the University of Tennessee College of Law in Knoxville, Tennessee. He has been a member of the faculty since 1976. He declares that, throughout his legal career, he has been frequently engaged by lawyers to assist them in navigating the process of filing statutory fee petitions in connection with their successful federal litigation. He has also filed his own statutory fee petitions in successful federal and state cases which he, himself has litigated.

[3] Mikel has been practicing law for eighteen years, primarily in the area of employment and civil rights law. She has extensive experience litigating in federal court, and in particular, she

Salonus "are reasonable and well within the acceptable range for the Eastern District." (Doc. 253-5.) Donna Mikel references similar awards of attorney's fees in cases she has litigated. She also references the Laffey Matrix and the United States Attorney's Fees Matrix, which she attaches to her declaration. The Laffey Matrix reflects a rate of $864 for Justin Gilbert and $636 for Jessica Solonus for 2017-18. *See Adcock-Ladd*, 227 F.3d at 351 (relying in part of the Laffey Matrix). The United States Attorney's Fees Matrix reflects a rate of $543 for Justin Gilbert and $395 for Jessica Solonus for 2016-17. In determining whether the rates sought by Gilbert and Solonus were reasonable, Mikel declares that she took into account the fact that the work in this matter was more complex than a typical employment law or civil rights matter.

Defendant argues that the declarations of Plaintiff's proffered legal professionals are inadequate because those individuals are not in a position to "accurately assess what precisely constitutes a customary rate in a case such as this." (Doc. 255 at 19.) Defendant instead submits the affidavits of Melinda Jacobs,[4] an attorney who was active in special education law for thirty-two years, and Scott Bennett, a twenty-four-year attorney. (Docs. 255-3, 255-7.)

Melinda Jacobs attested that, effective September 1, 2017, she raised her hourly rate from $250 per hour to $275 per hour, and that based on her expertise in education law and experience, she believed that to be a reasonable rate for an attorney in Tennessee with a level of experience comparable to hers in the special education field. Jacobs stated that since September 1996, she had exclusively represented school agencies in special education law matters. Beginning in 1999,

---

has experience litigating against HCDE. She is AV rated by Martindale Hubbell, has taught numerous seminars and given multiple presentations on employment law and civil rights topics for bar associations and private seminar providers, and is involved in leadership positions in multiple bar and professional organizations.

[4] Jacobs passed away before the Court of Appeals for the Sixth Circuit rendered its decision in this matter.

she owned and operated her own law firm, the Law Office of Melinda Jacobs, in Townsend, Tennessee and Franklin, Tennessee.

Scott Bennett, a twenty-four-year attorney in the Chattanooga, Tennessee area, attests that his hourly rate for his highest paying education law client is $195 per hour, but that $170 per hour is his normal rate for most litigation work. Bennett has been lead counsel for HCDE in this case since its inception. He attests that, over time, his practice has developed to the point that education law and representation of local boards of education accounts for almost the entirety of his practice. On this particular case, Bennett and his law partner, Mary C. DeCamp, both worked for $150 to $170 per hour. Bennett adds that, prior to seeing Gilbert at the due process hearing in October 2013, Bennett had never heard of Gilbert, or his firm, in the special education context.

Plaintiffs point out that Defendant does not offer a single parent-side practitioner to disagree with the rates sought by Plaintiffs' counsel. That distinction is important, Plaintiffs argue, in that a school-side practitioner can rely upon a school district to seek legal services as a "repeat player." School-side practitioners do not undertake the substantial risk that parent-side attorneys take by engaging clients via contingent fees. *See Hamlin v. Charter Twp. of Flint*, 165 F.3d 426, 438 (6th Cir. 1999) ("the contingent nature of the fee may be considered when calculating the reasonable hourly billing rate to provide an allowance for contingent risks assumed by the attorney. . . . [T]he reasonable hourly rate may be adjusted upward to account for the risk of non-payment inherent in a contingency fee arrangement"). Here, at the outset, Plaintiffs paid their lawyers a total of $75,000, $15,000 of which was to cover expert fees and $60,000 was to cover the beginning of attorney's fees. Plaintiffs' lawyers agreed to carry the case beyond that stage based on the uncertain prospect of obtaining statutory attorney's fees. Gilbert declares he knew

when taking on the case that his law firm was certain to have to bill time beyond what the original $60,000 could cover.

Plaintiff also cites cases where the Court of Appeals for the Sixth Circuit has approved of $400 requested hourly rates, or where courts within the Circuit have approved rates nearing $400. *See Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013) ($400 per hour rate an appropriate award for experienced attorney in Western District of Michigan); *Dolgencorp, LLC*, 2017 WL 9517513, at *6 (E.D. Tenn. Aug. 7, 2017) ($350 awarded to plaintiff's attorney in ADA case in Knoxville, Tennessee); *Jones v. Babcock & Wilcox Tech. Servs. Y-12, LLC*, No. 311CV00531PLRHBG, 2016 WL 4691294, at *4 (E.D. Tenn. Aug. 8, 2016) ($345 awarded to plaintiff's attorneys in civil rights case in Knoxville, Tennessee).

Dean Hill Rivkin addresses the recent decision of *EEOC v. Dolgencorp*, which awarded a $350 fee to an attorney in Knoxville who had requested a $400 rate, and who had similar experience to lead counsel here. He declares that a major reason cited for the $50 deduction in that matter was the belief that $350 an hour was sufficient to attract competent counsel to an employment discrimination case. (Doc. 253-3 at 5.) Rivkin argues that the same reasoning should not apply to a special education case, where lawyers are not "flocking" to the smaller, niche practice area. (*Id.*)

Donna Mikel notes that in 2017, she was awarded a $400 uncontested fee when serving as local counsel for a California law class action case. *Tami Long v. Covenant Transport, Inc.*, No. 1:15-cv-278 (E.D. Tenn.) (Apr. 28, 2017 Order by McDonough, J.). She also notes that her co-counsel was awarded a $395 rate in in an employment discrimination case for work performed in this District from 2009 to 2011. *Hunter v. City of Copper Hill, Tenn.*, No. 1:09-CV-238, 2013 WL

5278673, at *5 (E.D. Tenn. Sept. 19, 2013). Considering inflation, that award would be considerably more than a $400 rate today.

As to Salonus's rate of $275, she attests that her prior law firm set her 2016 billing rate at $275 for contingency-fee cases. In 2012, she was approved by the Middle District of Tennessee in a contested fee dispute for $250 per hour. Again, considering inflation, that award would be more than a $275 rate today. And in 2016, she was compensated in a fee petition at the rate of $275 per hour in the Western District of Tennessee.

Plaintiffs' remarks regarding the contingent nature and risk of being a parent-side practitioner in the special education context, in particular, are well-taken. Through Plaintiffs' collective evidence, and having considered Defendant's arguments regarding it, the Court finds that Plaintiffs have met their burden of demonstrating that each of the rates claimed by Plaintiffs' counsel are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. *Blum*, 465 U.S. at 806 n.11.

Defendant makes two additional arguments regarding the span of years that this matter has remained in litigation. Defendant contends that, even if this Court were to determine that the rate of $400 per hour is a reasonable rate for Gilbert's compensation, the Court should not assign that rate for any tasks dated prior to January 2017—when Gilbert raised his rate to $400 per hour. Defendant also argues that, for the duration of Jessica Salonus's involvement in this matter, she was a four-to six-year attorney and should not be compensated at her current market rate.

The decision to apply historic or current billing rates is within a district court's discretion "so long as it explains how the decision comports with the ultimate goals of awarding reasonable fees." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 617-18 (6th Cir. 2007); *see also Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284 (1989) ("an appropriate adjustment for delay in payment—whether

by the application of current rather than historic hourly rates or otherwise—is within the contemplation of the statute").  The Court of Appeals for the Sixth Circuit has affirmed that current market rates are reasonable when litigation has been ongoing over a span of years in order to counterbalance a delay in payment.  *See, e.g.*, *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005) (finding the current market rates reasonable because the litigation "had been ongoing for nearly six years"); *Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*, 684 F. Supp. 953, 958 (N.D. Ohio 1988), *aff'd in relevant part*, 917 F.2d 1413, 1447 (6th Cir. 1990) (noting that current rates were appropriate to counterbalance a delay in payment, inflation, and foregone interest).

The Court finds that application of current billing rates is appropriate here because this litigation has been ongoing over a span of years and the current rates help to counterbalance the delay in payment which has occurred.  Plaintiff's counsel began conferring with L.H.'s parents regarding possible representation in October 2013.  (Doc. 253-1.)  The lawsuit was initially filed in the Chancery Court of Davidson County, Tennessee in February 2014.  (Doc. 1-1.)  It has lasted nearly five years, involved a bench trial and multiple dispositive motions, and has resulted in a published opinion by the United States Court of Appeals for the Sixth Circuit.  *See L.H. v. Hamilton Cty.*, 900 F.3d 779 (6th Cir. 2018).  Gilbert attests that he does not know of any other parent-side attorneys in Tennessee who would have accepted the risk of litigating a least-restrictive-environment case for a child with an intellectual disability.  He also attests that the case was not only trying for his law firm, but that it was emotionally and physically tolling.

A special education case like L.H.'s is usually financially impractical for parents to carry beyond an initial due process hearing, absent the willingness of a lawyer to gamble upon his or her ultimate success and the fee shifting provisions of the civil rights laws.  The Court is mindful that

if "no compensation were provided for the delay in payment, the prospect of such hardship could well deter otherwise willing attorneys from accepting complex civil rights cases that might offer great benefit to society at large." *Jenkins*, 491 U.S. at 284. Indeed, the Supreme Court has emphasized the importance plaintiffs' bringing civil rights suits: "Congress expressly recognized that a plaintiff who obtains relief in a civil rights lawsuit does so not for himself alone but also as a private attorney general, vindicating a policy that Congress considered of the highest importance." *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986) (internal quotation marks omitted). And "[i]f the citizen does not have the resources, his day in court is denied him; the congressional policy which he seeks to assert and vindicate goes unvindicated; and the entire Nation, not just the individual citizen, suffers." *Id.*

The Court will calculate the lodestar rate according to Plaintiffs' attorneys' current billing rates—$400 for Justin Gilbert, and $275 for Jessica Salonus. The Court will consider Defendant's additional arguments under the *Johnson* factors after the Court completes an initial calculation of the lodestar value, below. *See Johnson*, 488 F.2d at 717-19.

### b.      Number of Hours Worked

Plaintiffs' attorneys' rates must be multiplied by the number of hours reasonably worked in order to calculate the lodestar value. *Dolgencorp*, 899 F.3d at 436.

The fee applicant should submit evidence of the hours worked. *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016). Counsel should be paid "for all time reasonably expended on a matter." *Blanchard*, 489 U.S. at 91 (quoting S. Rep. No. 94-1011, p. 6 (1976)). "This means that counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 628 (6th Cir. 2013) (internal quotation marks omitted).

"[H]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary*."
*Id*. Instead, the fee applicant must exercise "billing judgment" and the same ethical billing practices he or she would use in submitting the bill to a client. *Husted*, 831 F.3d at 702.

Plaintiffs filed a timesheet, which includes entries regarding the rate of the attorney, the amount of hours worked, a description of the work, and the relevant date. (Doc. 253-1.) The timesheet reflects 929.25 hours by Justin Gilbert and 407.75 hours by Jessica Salonus. Taken together, the lodestar calculation would result in $483,831.25 in attorney's fees, exclusive of costs. Plaintiffs instead request $378,831.25 in attorneys' fees, exclusive of costs. This amount includes an offset of $105,000.00 for fees TDOE already paid to Plaintiffs as part of its settlement. Gilbert declares that the full credit is somewhat of a disadvantage to his law firm, as some of the work included in that $105,000.00 related to issues unique to TDOE, but that he is giving the full credit to HCDE in order to avoid further argument on the matter.

Defendant takes issue with two main aspects of Plaintiffs proffered timesheet, arguing (1) it includes time spent on Plaintiffs' claims under the ADA, Section 504, and other causes of action, under which Plaintiffs did not prevail and which were superfluous, and (2) it uses quarter-hour billing increments which improperly inflate the amount of billable hours worked and documented. In addition, Defendant conducted a line-by-line review of Plaintiffs' timesheet, objecting on various different grounds to approximately 187 of Plaintiffs' 616 time entries. (Doc. 255-2.) The Court will address each of Defendant's arguments in turn.

First, Defendant argues Plaintiffs did not prevail on their ADA, Section 504, and other various claims, and that they are, thus, not entitled to any fees for time spent working on them. The Court is not convinced by this argument.

This Court granted Plaintiffs judgment on their ADA and Section 504 claims. (Doc. 212.) The Court of Appeals for the Sixth Circuit briefly addressed those claims in a footnote, stating that it would not analyze them on the merits since Plaintiffs were already due the full relief they requested under their IDEA claims. It is difficult to conceive how this exercise in judicial restraint could be characterized as Plaintiffs being "unsuccessful" on those claims. Instead, Plaintiffs were so successful that the appellate court did not have to resort to exploring Plaintiffs' further theories.

Regardless, "a civil-rights plaintiff need not succeed on every claim in order to recover attorney's fees. Success on a single claim is sufficient to become a prevailing party." *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 552-53 (6th Cir. 2014). So long as the claims are in common with successful claims, a prevailing party's full fee is recoverable. *EEOC v. Dolgencorp, LLC*, No. 3:14-CV-441-TAV-HBG, 2017 WL 9517513, at *9 (E.D. Tenn. Aug. 7, 2017), *report and recommendation adopted sub nom. EEOC v. Dolgencorp, LLC*, 277 F. Supp. 3d 932 (E.D. Tenn. 2017), *aff'd*, 899 F.3d 428 (6th Cir. 2018). "[T]he seminal opinion in *Hensley v. Eckerhart,* 461 U.S. 424, 435 [] (1983) explained that when claims 'involve a common core of facts' or are 'based on related legal theories,' the district court's rejection of certain grounds is not a sufficient reason for reducing a fee." *Jordan v. City of Cleveland*, 464 F.3d 584, 603 (6th Cir. 2006). This rule exists because litigation is not an exact science: Lawyers cannot precisely preordain which claims will carry the day and which will be treated less favorably. *See Goos v. Nat'l Ass'n of Realtors*, 68 F.3d 1380, 1386 (D.C. Cir. 1995). Instead, good lawyering as well as ethical compliance often require lawyers to plead in the alternative. *See id*. When, however, a plaintiff's unmeritorious claims are "based on different facts and different legal theories" than her meritorious claims, a court must treat them "as if they had been raised in separate lawsuits, and therefore no fee may be

awarded for services on the unsuccessful claim[s]." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989).

Because of these principles, in most cases, a party who does not prevail in a fee-shifting suit often seeks to show that their opposing party's unsuccessful claims were not related to their successful claim. If such is the case, the non-prevailing party does not owe reimbursement for time spent litigating those unsuccessful claims.

Defendant, however, seeks to make the opposite showing here. Instead of making the typical argument that Plaintiffs' ADA and Section 504 claims were not related such that Plaintiff should be denied compensation for time spent on them, Defendant argues that those claims were *so closely* related as to be duplicative of one another. Because the Sixth Circuit found those claims to be "redundant," Defendant states that "hours which are 'excessive, redundant, or otherwise unnecessary,' are not reasonably expended" and cannot be compensated. *Brooks v. Invista*, No. 1:05-cv-328, 2008 WL 304893, at *4 (E.D. Tenn. Jan. 30, 2008) (quoting *Hensley*, 461 U.S. at 434).

This Court has already considered, and rejected, the argument that Plaintiffs' ADA and Section 504 claims were subsumed by their IDEA claims such that all of the claims could not be brought in the same action. (Doc. 48 at 5-7.) As such, it was not "unnecessary" or "redundant" for Plaintiffs to bring claims under both provisions before this Court, despite an acknowledged "overlap in coverage" between the statutory provisions. *See Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 756 (2017) ("a plaintiff might seek relief for the denial of a FAPE under Title II and § 504 as well as the IDEA"); *Jordan*, 464 F.3d at 603 ("obvious and significant legal overlap" between claims called "for a full recovery of counsel's services, rather than a percentage reduction"). Defendant offers no authority for the proposition that compensation can be denied to

a party for spending time on claims which are too closely related to a claim which is ultimately successful.  In fact, it would be odd to say that Plaintiff cannot be reimbursed for time spent analyzing facts and issues which had a strong likelihood of contributing to Plaintiffs' success under a related cause of action in due course.

Because Plaintiffs' ADA and Section 504 claims were "common" to their IDEA claims, which were successful, this Court will not deny an award of attorneys' fees for time spent litigating them.  *Hensley*, 461 U.S. at 435.  For the same reason, this Court will not deny an award of attorneys' fees for time spent litigating claims Plaintiffs voluntarily dismissed, including claims involving procedural violations of the IDEA, claims under Tennessee state law, and claims involving retaliation.  *Jordan*, 464 F.3d at 604 (courts must give "full credit to a meaningfully successful plaintiff, rather than making a mechanical per-losing-claim deduction from an attorney's fee award").  Those claims were also based on the same "common core" of facts regarding L.H.'s denial of education in an inclusive environment with non-disabled peers.  *See Texas State Teachers Ass'n*, 489 U.S. at 789.

Along the same lines, Defendant argues that time Plaintiff spent on HCDE's statistics of inclusion should not be reimbursed because there is no evidence that the statistics were considered relevant or material to this Court or the Court of Appeals for the Sixth Circuit.  As such, Defendant argues those statistics did not meaningfully contribute to Plaintiffs' success.  But just as lawyers cannot be faulted for not being able to precisely preordain which claims will carry the day, they should also not be faulted for not being able to precisely preordain which evidence will be considered relevant or material in the course of four to five years of litigation.  This Court will not deny fees for time expended developing those statistics.

Second, Defendant argues Plaintiffs' use of quarter-hour billing increments improperly inflates the amount of billable hours worked and documented. Defendant also conducted a line-by-line review of Plaintiffs' submitted timesheet, pointing out numerous specific objections to Plaintiffs' entries.

This Court is mindful of the rule that it "need not, and indeed should not," become a "green-eyeshade accountant[]" when reviewing a timesheet for attorney's fees. *Fox*, 563 U.S. at 838. Instead, "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Id.* The determination of fees "should not result in a second major litigation." *Hensley*, 461 U.S. at 437. "Hours spent in reviewing records, talking to other lawyers or experts, preparing legal documents and the like cannot be fully verified and require the court to trust the lawyer's word that the hours claimed represent necessary work actually performed." *Husted*, 831 F.3d at 702 (quoting *Coulter v. State of Tenn.*, 805 F.2d 146, 150 (6th Cir. 1986)). Thus, the Court will not engage in a discussion as to each of the numerous specific objections Defendants have lodged regarding Plaintiffs' counsels' hundreds of time entries.

Some of Defendant's observations, however, do give the Court reason for pause regarding Plaintiffs' timesheet. Defendant points out that, in one instance, Plaintiffs' counsel entered two time entries, which, when added together, equal 24.5 billable hours in one day. Plaintiffs' counsel replies that the error likely occurred because counsel worked past midnight, and the entries were accordingly made on the same day instead of being more accurately split between separate days. Defendant also argues many of the over seventy time entries for quarter-hour increments were for activities which likely took much less than fifteen minutes of time. And while the Court declines to become a "green eyeshade accountant[]," as a mathematical reality, billing at quarter-hours will inevitably result in more time billed than when billing at one-tenth hours. *Fox*, 563 U.S. at 838.

"Whether quarter-hour billing is reasonable is a matter within the discretion of the district court," but in this District in particular, the use of quarter-hour billing is disfavored. *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 849 (6th Cir. 2013); *Brumitte v. Astrue*, No. 3:08-CV-53, 2009 WL 3208594, at *4 (E.D. Tenn. Sept. 29, 2009). District courts typically account for quarter-billing inaccuracy by reducing the number of hours worked by a percentage amount. *See Yellowbook Inc.*, 708 F.3d at 849; *Corbis Corp. v. Starr*, 719 F. Supp. 2d 843, 846 (N.D. Ohio 2010) ("quarter hour billing and conclusory descriptions 'invite downward adjustment' of attorney's fees"). "Quarter-hour billing cannot mathematically warrant a fee reduction greater than 60% relative to tenth-of-an-hour billing, and in most cases district courts should apply much lower percentage reductions." *Yellowbook Inc.*, 708 F.3d at 849.

Defendants request an across the board reduction of 20% based on a case from the Court of Appeals for the Ninth Circuit. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (20% reduction found appropriate where "block billing" had been utilized). Cases within this Circuit, however, tend to implement smaller percentage reductions. *See Hubbell v. FedEx Smartpost, Inc.*, No. 14-13897, 2018 WL 1392668, at *4 (E.D. Mich. Mar. 20, 2018) (5% reduction); *Kelmendi v. Detroit Bd. of Educ.*, No. 12-14949, 2017 WL 1502626, at *21 (E.D. Mich. Apr. 27, 2017) (5% reduction). This Court finds most instructive *Bench Billboard Co. v. City of Toledo*, 759 F. Supp. 2d 905, 915 (N.D. Ohio 2010), *aff'd in part, rev'd in part*, 499 F. App'x 538 (6th Cir. 2012), in which the Court of Appeals for the Sixth Circuit considered and affirmed a district court's reduction. Concluding that billing in quarter-hour increments generates a fee that is 15% higher than billing in at a tenth-of-an-hour, that court "split the difference" and reduced the amount of time awarded by 7.5%. *Bench Billboard Co. v. City of Toledo*, 759 F. Supp. 2d 905, 915 (N.D. Ohio 2010), *aff'd in part, rev'd in part*, 499 F. App'x 538 (6th Cir. 2012).

Following suit, here, the Court will apply a 7.5% reduction and reduce the 929.25 hours entered by Justin Gilbert to 859.56 hours and the 407.75 hours entered by Jessica Salonus to 377.17 hours. Multiplied by their hourly rates, as discussed above, the lodestar amount and presumptively reasonable fee is $343,824.00 for time billed by Justin Gilbert and $103,721.75 for time billed by Jessica Salonus, totaling $447,545.75. Deducting the $105,000 offset previously discussed produces a total of $342,545.75 as the lodestar fee.

### 2. *Johnson* Factors

Last, Defendant makes several arguments under the *Johnson* factors as to why the lodestar value should be adjusted downwards. The Court, however, does not find these arguments persuasive.

First and foremost, the critical factor in determining the reasonableness of a fee award is the degree of success obtained. *See Hobby*, 506 U.S. at 114. Plaintiffs have been particularly successful in this litigation. When Plaintiffs' counsel took on L.H.'s case, L.H. had lost at the state due process level. Now, L.H.'s right to be mainstreamed, avoiding placement in a full time, segregated classroom located in a different school outside of his neighborhood zone, has been vindicated. L.H.'s parents' right to appropriate reimbursement for payments made to TMS has also been vindicated. This case has resulted in multiple opinions favorable to Plaintiffs regarding issues such as application of the *Roncker* factors as to a child with an intellectual disability and the schooling of a child with an intellectual disability at a Montessori school.[5] Plaintiffs' counsel also

---

[5] *See L.H. v. Hamilton Cty. Dep't of Educ.*, 900 F.3d 779 (6th Cir. 2018); *L.H. v. Hamilton Cty. Dep't of Educ.*, No. 1:14-cv-126, 2018 WL 6069161 (E.D. Tenn. Nov. 20, 2018); *L.H. v. Hamilton Cty. Dep't of Educ.*, No. 1:14-cv-126, 2017 WL 2553421 (E.D. Tenn. June 2, 2017); *L.H. v. Hamilton Cty. Dep't of Educ.*, No. 1:14-cv-126, 2016 WL 6581235 (E.D. Tenn. Nov. 4, 2016); *L.H. v. Hamilton Cty. Dep't of Educ.*, No. 1:14-cv-126, 2015 WL 1926226 (E.D. Tenn. Apr. 27, 2015).

notes that L.H. helped to galvanize Hamilton County in making reforms for integrating more children who have special needs. Counsel notes that after L.H. prevailed before this Court, Hamilton County's Director of Special Education presented plans to the school board to provide more opportunities for children with disabilities.

Factors such as the time and labor involved, the novelty and difficulty of the questions, and the skill requisite to perform the services also point in favor of Plaintiffs. As previously mentioned, this case has lasted nearly five years, and has resulted in over 250 docket entries at the district court level, a seven-day trial at the district court level, and an oral argument before the Court of Appeals for the Sixth Circuit. This lawsuit involved issues regarding Down Syndrome generally and L.H.'s progress in school specifically, three different relevant schools (Normal Park, Red Bank CDC, and TMS), the standard for mainstreaming disabled students, the roll of experts, teachers, and educational staff members in IDEA cases, as well as appropriate private placement for purposes of reimbursement under the IDEA, among other issues. This Court has previously commented that this was a difficult case, and that the evidence, when considered as a whole, was "extremely close." (Doc. 172.) Plaintiffs' counsel additionally comments that HCDE was represented by seasoned and experienced lawyers. Plaintiffs' counsel remarks he agrees with the opening comment of opposing counsel during oral argument before the Sixth Circuit, where he stated, "Judges, the case before you this morning is arguably the most important special education case that the Sixth Circuit has considered in the past thirty-five years."

As to the preclusion of other employment by the attorney due to acceptance of the case, Plaintiffs' counsel declares that the complexity of L.H.'s case prevented him from taking on at least twenty other education or employment law cases. The Court has no reason to disbelieve this assertion, as this averages approximately four lost cases per year. Defendant asks too much in

arguing that Plaintiffs' counsel should have described cases which were lost in detail and offered information in support. Because this is a significant number of cases, this factor weighs in favor of awarding the full lodestar value.

Most of the remaining *Johnson* factors—such as the customary fee, whether the fee is fixed or contingent, the experience, reputation and ability of the attorneys, and awards in similar cases— have already been addressed, above. Two additional factors—the undesirability of the case and the nature and length of the professional relationship with the client—also favor Plaintiffs. When Plaintiffs' counsel took on the case, L.H. had already lost at the due process level, and as discussed above, Plaintiffs' counsel was wary of the potential for significant monetary losses. Plaintiffs' counsel states that the attorney client relationship in this case has held tight, L.H.'s parents having recently traveled to Cincinnati to watch oral arguments in person.

The final factor which has not yet been addressed—time limitations imposed by the client or circumstances—likely weighs in favor of Defendant. Plaintiffs do not make any argument they were under a time limitation or constraint in this matter after the initial due process phase. Mindful, however, that the degree of success obtained is the most important factor in determining the reasonableness of the fee award, and in light of many of the other factors weighing in Plaintiffs' favor, the Court declines to adjust the lodestar value based on this single factor. *See Hobby*, 506 U.S. at 114.

Because the *Johnson* factors do not present an occasion to deviate from an award of the previously calculated lodestar value in this case, the Court will **ORDER** an award of $342,545.75 in attorney's fees to Plaintiff's counsel.

**C.     Costs**

Plaintiffs request reimbursement of costs totaling $6,703.75.  In support, Plaintiffs have submitted invoices for photocopies, litigation support services, and court filing fees.  (Doc. 253-1 at 42-47.)  In response, Defendant states that Plaintiffs provided appropriate documentary support for the costs they incurred.  (Doc. 255 at 28.)  Accordingly, the Court will **ORDER** an award of $6,703.75 in costs.

**III.    <u>CONCLUSION</u>**

In conclusion, the Court will **GRANT IN PART** the motion by Plaintiffs for attorney's fees and costs.  (Doc. 252.)  Accordingly, the Court will **ORDER** Defendant to pay Plaintiffs $342,545.75 in attorney's fees and $6,703.75 in costs, totaling an amount of **$349,249.50**.  The Court will **DENY AS MOOT** Plaintiffs' motion to file a supplemental declaration regarding Plaintiffs' petition for attorney's fees.  (Doc. 262.)

**An Order Will Enter.**

**ENTER:**

**/s/**_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**